May it please the Court, Kathy Hyatt for Plaintiff's Appellants. I'd like to attempt to reserve three minutes for rebuttal if I may. Three? Yes, Your Honor. Okay, thanks. Would you please keep your voice up so everyone can hear? Thank you, Your Honor. Thank you. Your Honors, the key question before the Court today is whether a union may punish the political opponents of its incumbent leadership for campaigning against that leadership when the opponents have not violated any rule. Plaintiffs ask this Court to hold that such punishment violates the free speech provisions of the LMRDA. Plaintiffs are rank-and-file carpenters who ran for local union office in opposition to the incumbent administration. Plaintiffs won, defendants re-ran the election, and plaintiffs won again. We kind of know what the facts are here, but the rule that we're talking about, why don't you articulate the rule and then they're allowed to interpret the rule, correct, and say why that was not reasonable, right? I'm sorry, Your Honor, you're saying name the rules that defendants claim is violated? Yes. Defendants initially claimed four rules. The first was a rule against causing dissension among the membership. The second was a rule requiring obedience to authority. Defendants are no longer saying that those are reasonable restrictions on speech. The third was a rule against defrauding the union. The problem with this rule is that it's entirely inapplicable to the rules, to the facts of this case. And Your Honor asked the big problem is the phone banking, right, and the access to the membership list. Isn't that sort of at the heart of all of this? Those are the facts upon which defendants rely. In a free speech case, it is important that defendants point to a rule that those facts violated and that the actions of plaintiffs in particular violated. And so going back to the rules, one would be the remaining two. Well, and this is a preliminary injunction. Correct, Your Honor. And so that's for abuse of discretion, correct? Well, it is for abuse of discretion. However, if the district court committed an error of law, that's reviewed de novo. And then if the district court found or made errors of fact, that's reviewed for clear error. And you're claiming an error of law? Correct, Your Honor. What's the error of law? There are a number, but the key one is that the district court erred in applying the Sadlowski framework. The Supreme Court held in Steelworkers v. Sadlowski that when a union interferes with or partially interferes with free speech, that that must be pursuant to a reasonable rule. And therefore, the Supreme Court... And how did the district court misinterpret Sadlowski? In two key ways. First of all, the district court did not ask whether the defendant's conduct interfered with free speech. What the district court said is, well, the defendant cited actions, not speech. I thought the district court found that it didn't interfere. The district court said that two things, Your Honor. First, that the defendants had targeted actions, not speech. But the question in Sadlowski is whether the defendants interfered with free speech, not whether they explicitly targeted free speech. So, for example, the rule in Sadlowski concerned campaign contributions by nonmembers, and nonmembers don't have free speech rights under the LMRDA. The court asked, how did this rule impact the free speech of the union candidate? And it found that there was a practical effect, that the union candidate would have less widespread distribution of his  And the second thing that the court did is the court said that because the defendants had suspended their sentence, plaintiffs were free to campaign, and that might be... You're talking about in our case now, in this case. Correct, Your Honor. Sorry. The district court in this case said that because defendants had suspended the sentence until the election, that plaintiffs were free to campaign. And while it's true that the plaintiffs were nominally allowed to participate in the election, there were still three important impacts on plaintiffs' free speech. The first is that plaintiffs were due to be removed from office eight days after the hearing, and so that is imminent harm, even if it's not harm, you know, within 24 hours. The second is that it's impossible to run a campaign when you will be kicked out of office the day you win. Well, I'm inclined to agree with you that the district court was probably wrong on the irreparable harm part of it, but we still have to focus in on the likelihood of success. And, you know, that's part of the component here that really any of these come down to. And you're arguing that the plaintiffs were punished for engaging in protective speech, but doesn't the record support a conclusion that the plaintiffs instead were punished for the manner in which they conducted their phone banking? And if that's the case, and the district court makes certain findings here, I'm still, you know, we're not supposed to, if the district court said I can't say that you are going to, that there's a likelihood of success here, and so I'm not going to, you know, that you're going to be denied the injunction. If there's evidence both ways, how can we really say the district court abused its discretion there? Because the district court's finding that there was not a likelihood of success was based, premised on an error of law, on its failure to apply the Sadowsky framework. Punishing the actions used to produce speech is not distinguishable from punishing the speech itself. And it needs. You covered that. Now, you said there was a second error of law under Sadowsky besides that, right? Correct, Your Honor. What is that? The district court failed to ask whether the punishment was pursuant to a reasonable rule. All right. And district court found there's a violation of the Constitution, right? The Constitution itself, the Union Constitution. Isn't that itself a rule, the Constitution? The district court found, deferred to the defendant's assertion that plaintiffs had violated the rule against defrauding the Union. Well, put aside the fraud. Okay. But there are other bases, too, besides the fraud, right? Well, there's the fraud, there's obedience to authority, there's causing dissension, and then there's Rule 31H. The district court did not find that plaintiffs had violated Rule 31H. The district court said that even if plaintiffs, even if 31H didn't apply to plaintiffs, there were still other problems about the phone bank. And it's important to notice here when the passive voice is used and when the active voice is used. Well, the rule says that they get the names and addresses, right? And so it's about the phone numbers, isn't it? What rule is that? Section 31H of the Union Constitution says that the local union must allow candidates to view the list once per election cycle. It doesn't say anything about what candidates can do with the list, does it? It doesn't say anything either way about whether the local union can give more access, and it says nothing whatsoever about what candidates may or may not do. In other words, it's your position that there is no rule that governs the conduct of candidates with respect to phone banks? That's correct, Your Honor. Use of the list of the union members. Correct, Your Honor. And, in fact, the record shows that phone banking was commonplace in a wide variety of situations that it had occurred in internal elections before that the financial secretary Well, what about this interpretation? I think the district court said, well, because 31H only says that the union can do A, B, and C, you know, with the membership list, that means no one else can do anything with it. I mean, it implied that, you know, it sort of made a negative inference from what's in the rule as to what's prohibited by the rule, right? I don't want to read the opinion that way, Your Honor. The district court really used the canon of construction, expression of one thing, expressio unius, exclusio ulterior. Expression of one thing is the exclusion of something else. So the district court said they violated the rule. You know what bothers me about this case? There was a grievance procedure. In fact, there were two procedures that were followed where all of these issues could be taken up. And if we're balancing the equities, as Judge Callahan said, and the district court goes one way after there have been two grievance procedures, why should we reverse that? Your Honor, the error in the district court was not the balancing of the equities. It was the failure to apply the free speech requirement that there be a reasonable rule if plaintiffs are to be punished for their free speech activity. That framework is in itself a substantive protection for free speech. Well, so we can understand your argument to what you're attacking. In other words, your position is the district court made an error of law because there was no rule, let alone reasonable, right? Correct, Your Honor. Now, as best you understand it, what is the position of the district court and the defendants as to what the rule is that your clients violated? At this time, there are two rules left that they're defending, the defrauding rule and Section 31H of the Constitution. 31H is a rule that the union is depending upon? It's depending on both. It says with respect to defrauding that essentially the union says this was defrauding, therefore defer to the union. I don't know how they're going to stand up there and defend defrauding. But on 31H, all right, so it's a matter of interpreting the – now, what is that? That's part of the Constitution? It is, Your Honor. 31H, all right, so it's a matter of interpreting the union constitution. Now, as I think Judge Nelson implied, shouldn't we give some leeway to the union as to how it interprets its own constitution? Ordinarily, courts do give a lot of leeway to the unions in interpreting their own constitutions, but in free speech cases, courts are much more active. The drafter of the proviso to the free speech provision in the LMRDA said that it would be courts, not unions, that would determine whether a rule was reasonable. The union constitution states that a qualified candidate for office shall be permitted to examine the membership list containing the names and addresses of all the members once within 30 days prior to the election, and a local union or council shall honor reasonable requests from candidates to have their campaign literature mailed by the union at the candidate's expense. Correct, Your Honor. So that's the constitutional section we're interpreting, right? That's correct, Your Honor. And they said a little, the Latin term, that they said, well, that didn't say they're entitled to the phone numbers. And it says that they're entitled to the, and you're saying that was an unreasonable interpretation of that rule. I think it would be reasonable. If plaintiffs were coming up here and saying we have a right to the phone numbers, that would be a correct interpretation. This provision does not affirmatively create a right to the phone numbers. But it doesn't say that the local union can't give the phone numbers if a union member asks. And it certainly doesn't say that if a union member approaches and asks for the phone numbers and is told yes by the relevant local official, that that union can then be suspended from office if they won twice, fined $1,000, and disqualified from running again for six years. Okay. I think we understand your argument if you want to save time for rebuttal. Thank you. Good morning. Good morning. May it please the Court. I'm Brian Quinn for the appellees. Your Honors, the district court got it exactly right. This is not a free speech case. The district court heard the arguments of the plaintiffs. It took all of their evidence, their declarations, heard oral argument, and concluded that this is not a free speech case. Well, what if I say that I don't think the district court got it entirely right, that I say I think they could show irreparable harm. I'm not sure the district court got that right. Do you lose? No, Your Honor, and I respectfully disagree. I think the district court got it exactly right with irreparable harm. Okay. You can do that to your heart's content. But what if I don't agree with that? Tell me why you don't lose then. Because this is not a free speech case. Their rights were not violated under the LMRDA. The conduct that they engaged in was not free speech. They weren't penalized or brought up on charges for making phone calls and for what they said in those phone calls. What they were charged and penalized with, charges brought by other members, was the way they went about doing it. They hijacked this law. All right. But, in fact, they were penalized for the way they were electioneering, right? I mean, in other words, what was – you think Sadlowski was a free speech case? Sadlowski was a free speech case, Your Honor. Well, how could it be? It didn't even have anything to do with what union members said. Well, it had to do with contributions to an election to enable people. All right, so if that could be a speech case, why can't use of a phone bank be a free speech? It's a method of getting your message across. Just like getting a contribution from a non-union member is a method of getting your message across. That's speech. I mean, that's why we have Citizens United because, you know, money is speech, right? It's the way they went about it, Your Honor. It's not the actual making the phone calls. Well, that's just a subterfuge. You could stop everybody's speech by saying, well, you know, you can speak, but you can't use a newspaper because that's just the way we're going about it. Your Honor, in the transcript of the trial, Mr. Tweedy, one of the defendants himself, said phone banking is not illegal. You can do phone banking. Mr. Stuber, who brought the – No, but what can't you do? You can't use a union phone bank. You can't use a union office. First of all, what is there in 31H that applies directly to a candidate for office? Is there anything, any words in there that – read me the words in there that says a candidate for office can or cannot do A, B, or C. What 31H says, it lays out the minimum requirements that are provided for under the DOL regulations. Minimum requirements that apply to whom? That apply to people who are wishing to campaign for an office. In so many words, does it apply to the union? It applies to the union, but union members are obligated under the Constitution to uphold the obligation, which is Section 51. Sure, their own obligation, but not – in other words, if the union Constitution says, well, you know, the local treasurer can't use money for X, it's not up to some other member to enforce that, is it? Your Honor, the way – They can bring a charge, but that's about it. The way these plaintiffs went about securing and setting up this phone bank, they hijacked the election. They did it in such a way that nobody else that was participating in this election – All right, but they did it in a way that was not prohibited by the Constitution. Yes, it was, Your Honor. The Constitution said – what did they do that the Constitution said they could not do? What they said was the way this phone bank was orchestrated, that it ended up discriminating against – There's not a word in the Constitution about how to orchestrate a phone bank, is there? Your Honor, an election – Is there? It doesn't specifically address – Is there? It doesn't specifically address a phone bank. Okay, so how can there be a rule against orchestrating a phone bank then if that's not in the Constitution? Where is the rule? The rule may not specifically be in the Constitution, but conduct –  But it's not the phone bank itself, Your Honor. It's the conduct that the plaintiffs engaged in that led to the rerun of this election, the way they orchestrated the phone bank. Well, aren't you a little at the same time placing – Is there a rule against orchestration? Pardon me? Is there a rule against orchestration? Is that what you're saying? If it violates the Constitution, it does, Your Honor. All right, what rule was violated by this orchestration? All three rules that they were brought up on charges with, Your Honor – Section 51A1, defrauding, and also – What was the fraud? No. Defrauding was when these plaintiffs knew, before they started this ball rolling, that everybody had to have equal notice that everyone had a chance to phone bank. They orchestrated – Everyone has a chance. No, they did not, Your Honor. Why not? Why didn't they have a chance? As much of a chance as these people had. No, sir. What happened was, nobody was phone banking. It had never been brought up at the local union. Nobody was phone banking. Well, is there some rule that says you have to bring it up at a meeting before you can use the phone bank? This was a relatively new local union, Your Honor. And in the prior local – Okay, so there was no rule. It's a new union. But what the plaintiffs are arguing is that in the past, in the local unions that this local union was formed out of, there was a practice of doing phone banking. But they're incorrect. What the phone bank – A practice or not, to me it doesn't matter. The question is, under Stutlowski, was there a reasonable rule? What is the rule? You still haven't told me what the rule is that they violated. The rule is that they caused dissension, they defrauded the union – Over office? No, sir. What they did was they hijacked the selection and – Now, what do you mean by that, hijacked? What they did was – They used the phone bank. It's the way they went – Somebody at the union office told them they could get the phone numbers, right? What the facts show, Your Honor, is that was not really the case. Well, the facts are contested. I mean, they say certain – I think from your perspective, you say that they were told they had to tell the other people before they did it, and they didn't do that. And they say that they did, and so whatever. So it seems to me that what you're arguing is it's a little bit – well, you're saying it's not speech at all, but let's say even if it is, that they can place time, place, and manner, and they can say because the phones belong to – it's on the union property, right? Yes. And so – and the list, what they're saying is, yeah, if you tell the other side that that's what you're going to do, then you can use our property, and everyone then has equal access, and then we're fine with it. We're not saying that you can't do it, but you need to notify the other side. Is that – and the court – and those facts are contested, so the court's saying I can't say who would win here. But I have a question because there were two elections. The Reform Party candidates won both of them, first without phone banking by the other parties, but then the second election everybody did phone banking. So why shouldn't that – why shouldn't they prevail on that? In the first election, Your Honor, that's the one that was rerun, and that was when the phone banking occurred, and that was a mail-in ballot election. Someone protested that election to the general president. The general president of the International Union has the authority under the Constitution to interpret the Constitution, and what he said was this election was not done right because of the actions of the plaintiffs. That's in the election context. So he reran the election. He directed that local union to rerun that election. In the second election, I don't believe there was phone banking, Your Honor. That wasn't part of it. But the point here is this – courts are very reluctant to become involved in internal union matters when free speech is not the issue. And Judge Hernandez correctly cited to the IATSE case, Local 776, that says absent bad faith, absent special circumstances, we will defer to the union. The same thing the Supreme Court said in the Hardiman case, which was a causing dissension case. And the Supreme Court said in Hardiman, we're not going to get into interpreting union rules. That's what the union is for. Absent bad faith or an infringement on a right, we are not going to get involved in that. The plaintiff's conduct in this case has gone before five different authorities in the union and at the courts, and each time their arguments were rejected. You had the trial committee, which said you violated the Constitution. Well, let me ask you about that trial committee. How do you explain the fact that no delegates from Oregon were appointed to the trial committee? The odds of that happening are very slim. Judge Hernandez considered that, and he also considered the evidence put in by the union, which is a declaration from Mr. Matta, who says, I picked the names.  We had to get new people in there. One of the plaintiffs, Mr. Savage, says, you can't do it. You've got to do it by lottery. So Mr. Matta says, okay, I did it by lottery. He gave a declaration to the court saying, I did it by lottery. He picked the names. There was 11 people chosen. Of the people that were picked, five were on the trial committee. None of them, none of the people that the plaintiffs say were employees of Mr. Tweedy or at the direction of Mr. Tweedy were on that trial committee. They weren't there. So you had five members of the trial committee who sat in judgment of the five of the people who had been charged. It was an all-day trial. There was 400 pages of transcript. Everybody got their chance to speak. Mr. Tweedy was summoned by the plaintiffs. He didn't have to go there, but he was summoned as a witness, and he testified under oath and answered all of their questions. He didn't have to be there. That's the indication of a person who doesn't have anything to hide. You want me there? I'll come there and I'll answer your questions under oath, which is exactly what he did. The plaintiffs got a full and fair hearing under the LMRDA. I think the court correctly found that. There was no abuse of discretion in that. Getting back to the first point on the free speech, the court came to the same conclusion that the trial committee did, that the delegates did, because the penalties are not imposed by the trial committee, they're imposed by the delegate body. Over 100 delegates vote on whether or not to impose the penalties. If the delegates felt that these plaintiffs were getting a raw deal, they could have said, we're not imposing any penalties. Yeah, they're guilty, but there's no penalties. They didn't. They imposed the penalties that were recommended. What happened then is they appeal to the UBC Appeals Committee, the International Appeals Committee made up of members from all around the They come in and they hear the case. Judge Hernandez stated in his opinion, the appeals committee came to the same conclusion I did. This is not a free speech case. The people on the UBC Appeals Committee are members who interpret the appeals before them and they found that the plaintiff's conduct violated the UBC Constitution and it was not free speech. If a court is going to become involved in interpreting every rule that a union wants to bring a member up on charges that doesn't affect free speech, it's going to open up the floodgates to a lot of litigation. That's totally unnecessary. The courts have struck the correct balance here. Under Hardiman and under the Otzi case in the Ninth Circuit, which says, absent bad faith, we're not going to get involved. Let the unions decide what the rules mean. That's what we think this court should do because Judge Hernandez did not abuse his discretion. He considered all the facts that were put before him by us and by the plaintiffs and he addressed them in his 19-page opinion. He went through each one of their arguments and said, no, I don't believe that with respect to the choosing of the trial committee and some Oregoners were not in there. He said, well, Mr. Mattak gave me a declaration and said that he picked them through lottery. I can't conclude that you're going to prevail on the merits plaintiffs in this regard. He addressed all the requirements for injunctive relief and rejected it and found that the plaintiffs were not entitled to injunctive relief. Plaintiffs come here today and do not show any abuse of discretion by the trial court judge. We think the decision of the trial court should be upheld and the injunction denied. Unless the court has any other questions. We don't appear to. Thank you for your argument. Thank you. Thank you, Your Honors. Your Honors, two authorities have considered this case so far, the district court and the union. Congress has recognized the risks of allowing incumbent union leaderships to determine whether their own conduct interferes with the free speech of members who oppose them. In free speech cases, courts do not defer to this determination by a union. Instead, they apply a longstanding and well-known free speech protection, the requirement that people can only be disciplined for their opposition to officials pursuant to a reasonable rule. This is necessary to prevent union officials from exercising their discretion to censor opposing viewpoints, and it's necessary to allow union members to know when their speech will be punished and when it won't. Well, I guess, though, if the rule was that you can phone bank, but you have to tell the other side if you want to do it on our premises, you have to let the other, you know, give equal access to the phone numbers to both sides, why isn't that reasonable? It's not stopping people from doing it. It's just saying, hey, we just don't, you know, we don't want to give one side the jump over the other on our premises. If such a rule existed, it would be reasonable. If there had been a rule that said exactly what you said, candidates may do this if candidates do that, then plaintiffs would have had the opportunity to know that that's what they had to do, and then plaintiffs could have made, you know, if they violated the rule, then they would have known ahead of time that they were doing it, and other union members would see, oh, these people weren't punished because they opposed Mr. Tweedy. These people were punished because the rule said notify people in advance, and they didn't. The rule didn't say anything about what either unions or candidates should do in these circumstances. But it certainly, most importantly, it didn't say anything whatsoever about what candidates ever do with respect to lists, except that under certain circumstances they have a right to the list. All right. But there's also some discussion about the appellee's claim that they told your clients, you've got to contact the other, you know, this, if you want to do it, that's what you have to do. And they claim that they did what they, they're claiming that they did notify the other side, right? Your Honor, I don't believe anybody has asserted that anything in the record says that anyone told the candidates ahead of time they needed to contact anybody else. The candidates told the local union officer, hey, we read the LMRDA to say that you should contact other people. But that was not the, the only, the only thing the LMRDA might have required is that the local union contact other people. It required nothing of the candidates. No one told the candidates you have to contact other people, and defendants didn't contend that they did. What about the re-election when the same officers were elected? My understanding of the facts, Your Honor, is that this phone bank occurred in the first election, that the incumbent administration re-ran the election, and that Was there phone banking then by all parties? It's not in the record, but there was robo-phone banking of all members get out the vote. Somehow I got it out of the record, but Okay. If it's not there, it's not there. Just one question. Sure. Mr. Quinn said that this is not a free speech case, and that's why he also reads a district court opinion in the district court's conclusion. Do you agree that this is not a free speech case? I disagree that it's not a free speech case. The district court held it was not a free speech case, and therefore didn't apply free speech protections, but regulating how someone engages in speech, regulating putting pen to paper, regulating putting ink on your skin is regulating speech. It has the same censorship risks, and therefore the same framework that we've used in this country for 200 years about you can't just regulate someone's speech through after the fact criticism. You have to have clear rules ahead of time that limit official discretion and tell people when they will and won't be punished for speech, so that when they engage in speech that isn't prohibited, they know that they won't be punished. All right. Thank you for your argument. This matter will stand submitted.
judges: Nelson, Tashima, Callahan